UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| ROBERT YOUNG, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 10-1008 |
| | ) | |
| BRADLEY ROBERT, Warden | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

**ORDER**

Now before the Court is Petitioner, Robert Young's ("Young"), Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Petition [#1] is DENIED.

**BACKGROUND**

Young was charged in McLean County with unlawful delivery of more than fifteen grams of cocaine. At Young's bench trial, the State introduced testimony from Carrie Anderson ("Anderson"), a cocaine distributer. Anderson testified that Young had been supplying her with cocaine once or twice per week from March 2005 until her arrest in September 2005. Whenever Anderson needed cocaine, she normally would call Young, and he would bring the cocaine to her residence in Bloomington.

In addition, the State introduced testimony from Mike Gray ("Gray"), a detective who bought cocaine from Anderson nine times while working undercover. Gray visited Anderson's residence on September 8, 2005, and asked to purchase an ounce of cocaine. Anderson testified that she placed several calls to Young that day for him to bring the cocaine to her house.

1

Anderson further testified that Young did not deliver the cocaine until September 10, 2005. That day, Anderson called Young several times to inquire when he was going to deliver the cocaine. She also received several calls from Detective Gray inquiring when she was going to receive it. At approximately 10:50 p.m. on September 10, Young arrived at Anderson's house with the cocaine, and Gray arrived at her house approximately ten minutes later. Anderson and Gray acknowledged each other, but they did not have a conversation. Gray testified that he recognized Young from local records and his driver's license photograph. Anderson testified that she left Gray in the living room while she and Young went upstairs where Young gave her the cocaine. Anderson weighed the cocaine in the basement and then asked Gray to drive around the block with her. While in the car, Anderson sold Gray an ounce of cocaine. Detective Gray and an officer surveilling the house corroborated Anderson's testimony.

In addition, the State presented phone records obtained from the phone company to further corroborate Anderson and Gray's testimony. For example, when Gray requested to buy cocaine from Anderson on September 8, 2005, she replied that she would "call her guy and see if it could be done." Shortly thereafter, Gray saw Anderson place a telephone call at 12:45 p.m. Anderson's telephone records confirm that Anderson called Young at 12:45 p.m. that day. Furthermore, Gray testified that he had several phone conversations with Anderson on September 10, 2005, in which Anderson referenced calling her "source" either before or after each conversation. Again, Anderson's telephone records revealed that Anderson called Young each time that Anderson indicated to Gray that she would call her source.

In his defense, Young presented the testimony of his twelve-year old son. Young's son testified that Young was with him at his youth football team party in Markham, Illinois from 3:00 p.m. until 10:00 p.m. on September 10, 2005. He further testified that he and his father

drove straight home and watched television until he fell asleep. He did not state what time they arrived at home, although he stated that Markham is a one and a half to two-hour drive back to Bloomington. Young's son stated that his father was still home when he awoke at 1:00 a.m. During his testimony, Young introduced a football schedule showing that the party ended at 7:00 p.m.

After the trial court found Young guilty, Young sent the judge a letter complaining that his attorney failed to call an alibi witness, Thomas Ketchum ("Ketchum"), to testify. As a result, the judge questioned Young's counsel about the allegations. Counsel explained that he interviewed Ketchum to determine if Ketchum could provide an alibi, but that Ketchum did not have a clear recollection of Young's whereabouts during the relevant time period. Thus, counsel decided not to call Ketchum as a witness as part of his trial strategy. The trial court denied Young's motion and sentenced him to ten years of imprisonment.

On direct appeal to the appellate court, Young argued that his case should be remanded because the trial court did not make "sufficient inquiry into Mr. Young's *pro se* allegations of ineffective assistance of counsel under the Illinois Supreme Court's decision in [*People v.*] *Krankel*." (Ex. A1 at 2). In 2008, the state appellate court affirmed Young's conviction. In rejecting his *Krankel* argument, the court noted that *Krankel* requires the trial court to conduct an adequate inquiry into a *pro se* defendant's allegations of ineffective assistance of counsel by either one of the following three ways: (1) questioning the trial counsel; (2) questioning the defendant; (3) relying on its own knowledge of the trial counsel's performance in the trial. (Ex. B at 2). Because the trial court satisfied *Krankel* by questioning the trial counsel, the appellate court held that Young's claim was meritless.

In Young's petition for leave to appeal (PLA) to the Illinois Supreme Court, he raised additional arguments, including that he was deprived of his constitutional rights. Specifically, Young raised essentially the same arguments that he raises now in his federal habeas petition. First, Young argued that the State fabricated evidence and suborned perjury by Anderson and Gray. He further argued that the phone company fabricated phone records and the police fabricated police reports and testimony. Second, Young argued that he was denied of his Sixth Amendment rights because trial counsel was ineffective by failing to call Ketchum to testify at trial. The Illinois Supreme Court denied Young's PLA, and the United States Supreme Court denied certiorari on April 6, 2009. Young did not file a petition under Illinois's Post Conviction Hearing Act. Subsequently, Young filed a complaint for habeas corpus relief in state court. The court denied relief dismissing Young's constitutional claims as frivolous, and Young did not appeal.

Young now brings the present petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging essentially that the State fabricated evidence and suborned perjury by Anderson and Gray denying him of a fair trial, and that trial counsel was ineffective by failing to call an alibi witness in violation of his Sixth Amendment rights. The petition is fully briefed, and this Order follows.

## DISCUSSION

Before reaching the merits of a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254, a district court must consider "whether the petitioner exhausted all available state remedies and whether the petitioner raised all [of] his federal claims during the course of the state proceedings." *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991) (quoting *Henderson v. Thieret*, 859 F.2d 492, 496 (7th Cir. 1988)). If the answer to either of these questions is "no,"

then the failure to exhaust state remedies or procedural default bars the petition. *Id.* In other words, if a petitioner fails to give the state courts a full and fair opportunity to review his claims, then his petition must fail. *Bocian v. Godinez*, 101 F.3d 465, 468-69 (7th Cir. 1996).

Exhaustion of a federal claim occurs when it has been presented to the highest state court for a ruling on the merits or when it could not be brought in state court because a remedy no longer exists when the federal petition is filed. *Id.* State prisoners must give the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Procedural default occurs when a claim could have been but was not presented to the state court and cannot, at the time the federal petition is filed, be presented to the state court. *Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992). This occurs in one of two ways. First, a procedural default may occur when a petitioner fails to pursue each appeal required by state law, *Jenkins v. Gramley,* 8 F.3d 505, 507-08 (7th Cir. 1993), or when he did not assert the claim raised in the federal habeas petition in the state court system. *Resnover*, 965 F.3d at 1458-59. The second way in which a petitioner may procedurally default a claim is when a state court disposes of the case on an independent and adequate state law ground, regardless of whether that ground is substantive or procedural. *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 2553-55 (1991).

Federal review is barred for claims that are procedurally defaulted unless the petitioner can demonstrate cause and prejudice. *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 1572-73 (1982); *Farrell*, 939 F.2d at 411. Review in federal court is also possible if a fundamental miscarriage of justice would otherwise occur in that a constitutional error probably resulted in

the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 864-67 (1995).

Here, Young's claims are procedurally defaulted because Young did not properly exhaust his federal claims through the state courts. Although Young presented a claim regarding ineffective assistance of trial counsel to the state appellate court, he presented the claim as a state law claim rather than a constitutional claim. Specifically, Young argued that the trial judge violated state law by failing to adequately inquire into Young's *pro se* allegations of ineffective assistance of counsel. Young relied solely on state law, citing no relevant federal cases or state cases applying constitutional law. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). Thus, this Court concludes that Young did not present any constitutional claim on direct appeal, and he has therefore procedurally defaulted this claim.

Notably, in Young's petition for leave to appeal to the Illinois Supreme Court, he argued that his constitutional rights were violated. Even so, Young did not provide the state courts with a full opportunity to resolve his constitutional claims because he did not present them to the appellate court first. *Wilson v. Briley*, 243 F.3d 325, 329 (7th Cir. 2001) (holding that a petitioner did not properly present his federal claims to the state courts because he raised them only to the Illinois Supreme Court but did not raise them to the appellate court). In other words, Young did not put his constitutional claims through "one complete round of the State's established appellate procedures." *O'Sullivan*, 526 U.S. at 845.

Furthermore, Young did not properly exhaust his state habeas corpus claim because he did not appeal it whatsoever. As discussed earlier, Young must present his federal claims through one complete round of the state's appellate procedures. *Id.* Young appropriately raised his constitutional claims in a state habeas petition, but then he did not even appeal it to the

appellate court. Again, Young did not provide the state courts with a full opportunity to resolve his constitutional issues, and therefore, Young's claims are procedurally defaulted.

    A federal court can review procedurally defaulted claims only upon a showing of cause and prejudice for the default or by showing that failure to grant relief would result in a fundamental miscarriage of justice. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). To establish cause, a petitioner must show that some external impediment prevented him from asserting his federal claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner can establish prejudice when he can show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

    Young essentially argues that he has established cause because he requested his state appellate defender to submit his constitutional claims on direct appeal, and the appellate defender did not. While it is apparent that Young was dissatisfied with his counsel, Young has not established that his counsel erred by not presenting his constitutional claims. The appellate defender informed Young that his arguments "concerning the fairness of the trial need to be raised in a petition for post-conviction relief." Ex. 4C. He further noted that he "did not find any 'constitutional violations' to be raised on appeal." *Id.* In assessing Young's constitutional arguments, his counsel noted that Young's claims were factual determinations made by the trial judge, and it is not the role of the appellate court to "retry the defendant." *Id.* Young's counsel even consulted with his supervisor who also did not find any constitutional issues to be raised on appeal. Young has failed to establish that an external impediment prevented his counsel from asserting his constitutional claims in state court.

Moreover, counsel notified Young that he could proceed *pro se* in his appeal so that he could submit his own brief. Apparently, Young chose not to do so. He has failed to establish cause as to why he did not do that. More importantly, when Young petitioned for habeas corpus relief in the state court, Young failed to appeal the trial court's decision dismissing his petition. Again, Young has presented no evidence to establish cause as to why he did not appeal that decision.

In addition, Young cannot establish cause for his ineffective assistance of counsel claim simply because his counsel refused to raise all of his arguments in the Illinois Appellate Court. To do so, a petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Smith v. Gaetz*, 565 F.3d 346, 353 (7th Cir. 2009). An appellate counsel is not required to raise trial counsel's alleged ineffectiveness, particularly when it is the weaker of the petitioner's arguments. *Id.* Here, appellate counsel deliberately chose not to raise Young's constitutional argument regarding ineffective assistance of trial counsel because it was reasonable to believe that trial counsel made a sound decision as part of his trial strategy.

Even assuming Young can establish cause, he cannot establish prejudice. To do so, Young must establish that the alleged errors worked to his actual and substantial disadvantage and infected his entire trial with error of constitutional dimension. Young presents numerous arguments, all of which are essentially baseless allegations that the State fabricated evidence and suborned perjury by Anderson and Detective Gray. At trial, the State presented testimony from three different witnesses confirming that Young delivered the cocaine to Anderson on September 10, 2005. Young states that both Anderson and Gray perjured themselves but presents no real arguments to support that contention. Most of Young's petition consists of speculation that the

trial judge, police, and witnesses conspired against him to fabricate evidence. Specifically, he argues that police falsified police reports, the phone company falsified phone records, and the judge withheld adjudicating evidence. The record simply does not support these allegations of a mass conspiracy. Without any sort of factual evidence to support these determinations, Young cannot establish that his trial was prejudiced.

Young does not argue that the fundamental miscarriage of justice exception applies here. As such, this Court will not make this argument for him. *See Franklin v. Gilmore*, 188 F.3d 877, 884-85 (7th Cir. 1999) (declining to address whether procedural default was overcome because petitioner did not assert either exception); *Todd v. Schomig*, 283 F.3d 842, 849 (7th Cir. 2002) (accord).

To obtain a certificate of appealability (CA), a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C § 2253(c)(2). When the district court denies a habeas petition on procedural grounds without reaching the merits of the petitioner's constitutional claims, the petitioner must also show that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

Here, no reasonable jurist could conclude that Young's habeas petition was not procedurally defaulted. For the reasons stated above, a "plain procedural bar" exists because Young did not present either of his constitutional claims through one complete round of the state appellate process as required by the Supreme Court. *O'Sullivan*, 526 U.S. at 845. Furthermore, Young has not made a showing of a denial of a constitutional right. As noted above, Young's

arguments are nothing more than disjointed speculation that the police, judge, phone company, and counsel conspired against him to convict him, but none of these accusations are supported by clear facts.  Even if there was some dispute regarding when Young left the party, three different witnesses placed Young at Anderson's house.  Certainly, no reasonable juror could find that Young was denied a constitutional right based on these accusations.  Accordingly, this Court will not issue Young a certificate of appealability.

## CONCLUSION

For the reasons set forth herein, Young's Petition for Writ of Habeas Corpus [#1] pursuant to 28 U.S.C. § 2254 is DENIED.  This matter is now terminated.

Entered this 30th day of July, 2010.

/s Michael Mihm
Michael M. Mihm
United States District Judge